UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
---------------------------------------------------------X
WEN LIN LIU,
*on his own behalf and on behalf of others similarly situated*

                              Plaintiff,
                              v.

LITTLE LOTUS LLC
    d/b/a Little Lotus;
ALLIANCE RESTAURANT GROUP LLC
    d/b/a Red Lotus;
LAWRENCE Y. WANG
    a/k/a Larry Wang; and
BILIAN CHEN
    a/k/a Bi Lian Chen
    a/k/a Nia Chen
                              Defendants.
---------------------------------------------------------X

Case No. 25-cv-00990

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff WEN LIN LIU (hereinafter referred to as Plaintiff), on behalf of himself and others similarly situated, by and through his attorney, Troy Law, PLLC, hereby bring this complaint against Defendants LITTLE LOTUS LLC d/b/a Little Lotus (hereinafter "Little Lotus"); ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus (hereinafter "Red Lotus"); LAWRENCE Y. WANG a/k/a Larry Wang (hereinafter "LAWRENCE Y. WANG"); BILIAN CHEN a/k/a Bi Lian Chen a/k/a Nia Chen (hereinafter "BILIAN CHEN") (LAWRENCE Y. WANG and BILIAN CHEN as "Individual Defendants"), and allege as follows:

## INTRODUCTION

1.     This action is brought by the Plaintiff WEN LIN LIU, on behalf of himself and others similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and of the Connecticut Minimum Wage Act ("CMWA"), Connecticut General Statutes Section 31-68 *et seq.*,

arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and CMWA by engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3. Plaintiff allege pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime wages (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4. Plaintiff further allege pursuant to the Connecticut law, Connecticut General Statutes Section 31-68 *et seq*. and Connecticut Public Act 15-86 that he is entitled to recover from the Defendants: (1) double overtime compensation, (2) pre-judgment and post-judgment interest, and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), because they are so related to claims over which this Court has original jurisdiction as to form part of the same case or controversy under Article III of the Constitution.

7.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8.     From on or about October 11, 2024 to February 3, 2025, Plaintiff WEN LIN LIU was employed by Defendants to work as a sushi chef at Defendants' restaurant, "Red Lotus," at 872 Bridgeport Ave, Shelton, CT, 06484.

## DEFENDANTS

*Corporate Defendants*

9.     Defendant ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus is a domestic business corporation organized under the laws of the State of Connecticut with a principal address at 872 Bridgeport Ave, Shelton, CT, 06484.

10.    ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

11.    ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus purchased and handled goods moved in interstate commerce.

12.    Defendant LITTLE LOTUS LLC d/b/a Little Lotus is a domestic business corporation organized under the laws of the State of Connecticut with a principal address at 98 S Water St New Haven, CT 06519.

13.    LITTLE LOTUS LLC d/b/a Little Lotus is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars

($500,000) per year.

14. LITTLE LOTUS LLC d/b/a Little Lotus purchased and handled goods moved in interstate commerce.

15. At all relevant times, Liu and other employees of Red Lotus and Little Lotus handled goods moved in commerce, including ingredients, imported alcohols, and cleaning supplies.

16. Throughout the period relevant to this lawsuit, Red Lotus employed about seventeen (17) or eighteen (18) workers at any one time: three (3) sushi chef, one (1) oil wok, one (1) fry wok, one (1) teriyaki chef, one (1) head chef, one (1) dishwasher, one (1) preparer for Little Lotus, three (3) waiters, two (2) packers, one (1) busboy, one (1) manager, one (1) bartender, and one (1) receptionist.

### *Owner/Operator Defendants*

17. LAWRENCE Y. WANG a/k/a Larry Wang known as Boss to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

18. LAWRENCE Y. WANG a/k/a Larry Wang actually hired Plaintiff.

19. LAWRENCE Y. WANG a/k/a Larry Wang actually fired Plaintiff over the phone.

20. In addition, LAWRENCE Y. WANG a/k/a Larry Wang in fact hired and fired other employees on behalf of at ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

21. The employees that LAWRENCE Y. WANG a/k/a Larry Wang hired included the sushi chef TONY, who worked from in or around October 2023 to on or about November 15, 2024; sushi chef SAM (who replaces the sushi chef TONY) who worked from on or about November 15, 2024 to December 15, 2024; sushi chef YAJIE ZHAN who worked from on or about December 15, 2024 to February 15, 2025; kitchen head chef ANDY who hails from Malaysia (who replaces head chef PETER); a teriyaki chef (who replaces teriyaki chef LIN).

22. The employees that LAWRENCE Y. WANG a/k/a Larry Wang fired included sushi chef SAM, kitchen head chef PETER, who departed the employed of Defendants on or about December 1, 2024; teriyaki chef LIN on or about December 7, 2024.

23. LAWRENCE Y. WANG a/k/a Larry Wang actually paid Plaintiff.

24. LAWRENCE Y. WANG a/k/a Larry Wang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, CMWA and the regulations thereunder, and is jointly and severally liable with ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

25. BILIAN CHEN a/k/a Bi Lian Chen a/k/a Nia Chen known as Lady Boss to Plaintiff, is registered as the agent with the Secretary of the State of Connecticut and a member of ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

26. BILIAN CHEN a/k/a Bi Lian Chen a/k/a Nia Chen directly supervised Plaintiff's work while Plaintiff was employed by ALLIANCE RESTAURANT GROUP

LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

27. BILIAN CHEN a/k/a Bi Lian Chen a/k/a Nia Chen actually hired a sushi chef on behalf of ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

28. That sushi chef was her brother, starting from November 15, 2024.

29. BILIAN CHEN a/k/a Bi Lian Chen a/k/a Nia Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, CMWA and the regulations thereunder, and is jointly and severally liable with ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

## STATEMENT OF FACTS

### Corporate Defendants Together Formed a Single Integrated Enterprise

30. LITTLE LOTUS LLC d/b/a Little Lotus use ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus to buy materials and restaurant equipment ahead of its opening.

31. Plaintiff was instructed to receive the inventory and move to warehouse for LITTLE LOTUS LLC d/b/a Little Lotus.

32. Chef RUSS from ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus was assigned to be transferred to LITTLE LOTUS LLC d/b/a Little Lotus upon its opening.

33. Defendants committed the following alleged acts knowingly, intentionally, willfully, and maliciously against the Plaintiff, the FLSA Collective Plaintiff, and the Class.

34. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees at least the Connecticut minimum wage for each hour worked.

35. At all times during plaintiff's employment corporate defendants were jointly operated by the individual defendants, who together centralized, controlled, and implemented a unified scheme of labor relations.

36. BILIAN CHEN a/k/a Bi Lian Chen a/k/a Nia Chen is the Principal and Managing Member for both ALLIANCE RESTAURANT GROUP LLC d/b/a Red Lotus and LITTLE LOTUS LLC d/b/a Little Lotus.

37. Upon information and belief corporate defendants share supplies and materials amongst the different restaurants.

38. At all times during plaintiff's employment the work that plaintiff provided was essential to the other business that were part of the enterprise.

## Wage and Hour Claims

39. From on or about October 11, 2024 to February 3, 2025, Plaintiff WEN LIN LIU was employed by Defendants to work as a sushi chef at 872 Bridgeport Ave, Shelton, CT, 06484.

40. While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

41. Plaintiff's primary duties was not executive, administrative or professional

42. Defendants failed to keep and maintain time-in and time-out records of Plaintiff's hours worked per day and per week.

43. Upon information and belief, Defendants failed to keep and maintain time in and time out records or records of Plaintiff's hours worked per day and per week, in order to mitigate their liability for wage violations.

44. Rather, the restaurant staff's working hours and days were recorded by the oil wok IVERSON who hails from Taiwan, and calculated the employee pay.

45. Defendants failed to keep full and accurate records of Plaintiff s' hours and wages.

46. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations.

47. Defendants knew that the nonpayment of overtime pay would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

48. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

49. From on or about October 11, 2024 to February 3, 2025, Plaintiff WEN LIN LIU's regular work schedule ran from around:

   a. 10:40 to 22:00 for eleven and one third (11.33) hours for two (2) "full" days on Mondays and Tuesdays and for twenty two and two thirds (22.67) hours per week;

   b. 10:40 to 23:00 for twelve and one third (12.33) hours for two (2) "full" days on Fridays and Saturdays and for twenty four and two third (24.67) hours per week;

   c. 11:40 to 21:00 for nine and one third (9.33) hours on Sundays; and

    d. 16:00 to between 22:00 and 23:00 every other week for one "half" days on either Wednesdays or Thursdays for six and a half (6.50) hours per week.

50. Plaintiff WEN LIN LIU regularly worked five "full" days and one "half" day days each week and for an average of approximately sixty three and one sixth (63.17) hours each week

51. Further, at all relevant times, Plaintiff WEN LIN LIU had to drive a restaurant transportation van every day, morning and night, to pick up and drop off employees for commuting, which takes about twenty (20) minutes each time.

52. At all relevant times, Plaintiff WEN LIN LIU did not have a fixed time for lunch or for dinner.

53. During the lunch break, Plaintiff was forbidden from leaving the store. Instead, Plaintiff was required to be on standby to pick up, check, and move deliveries from the delivery company.

54. In fact, Plaintiff WEN LIN LIU had ten (10) to fifteen (15) minutes to eat and even then he was on call, meaning that if customer's order came, his break stopped and he had to prepare their order.

55. Additionally, Plaintiff WEN LIN LIU had to be on standby to pick up, check, and move deliveries from the delivery company if they arrive during his lunch break.

56. At all relevant times, Plaintiff WEN LIN LIU was paid a flat rate of one thousand two hundred thirty four dollars and fifty cents ($1237.50) per week for five and a half (5.5) days worked.

57. At all relevant times, Plaintiff WEN LIN LIU was paid a flat rate of one

thousand four hundred dollars ($1,400) per week for six (6) days worked.

58. Defendants and Plaintiff did not reach any mutual understanding as to the number of hours the flat weekly salary was supposed to cover.

59. Defendants did not reach any mutual understanding with Plaintiff as to whether his flat weekly salary was supposed to cover all his hours worked regardless of what they were.

60. Defendants did not reach any mutual understanding with Plaintiff as to whether he was supposed to be compensated according to the fluctuating workweek method under 29 C.F.R. § 778.114.20.

61. Accordingly, throughout Plaintiff's employment, his flat weekly salary only compensated him for the first forty (40) hours of his work each week, and failed to compensate him for his hours worked beyond the fortieth (40th) hour in each workweek.

62. Throughout Plaintiff's employment his flat weekly salary failed to compensate him for his hours worked beyond the fortieth (40th) hour in each workweek at a rate one and one-half times (1.5x) his regular hourly rate (calculated by dividing his flat weekly salary by forty (40) hours per week).

63. Throughout his employment, Plaintiff WEN LIN LIU lived in an employee dorm located at 18 Capitol Drive, Shelton CT with ten (10) other employees.

64. Upon information and belief, the cost to house Plaintiff amounted to approximately one thousand two hundred dollars ($1,200) per month.

65. Throughout his employment, Plaintiff WEN LIN LIU was given one (1)

work uniform consisting of a Black T-Shirt that he had to maintain and wash with his own time and money.

## COLLECTIVE ACTION ALLEGATIONS

66. Plaintiff bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

67. Plaintiff bring his Connecticut Minimum Wage Act of 1951 claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is two years before the filing of the Complaint in this case as defined herein (the "Class Period").

68. All said persons, including Plaintiff, are referred to herein as the "Class."

69. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P.

23.

### *Numerosity*

70.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

71.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

72.     Whether Defendant employed Plaintiff and the Class within the meaning of the Connecticut law;

73.     Whether Plaintiff and Class members are entitled to and paid minimum wage and overtime under the CMWA;

74.     At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

75.     Plaintiff claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies

and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

76.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiff in both class action and wage-and-hour employment litigation cases.

### *Superiority*

77.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

78. Upon information and belief, Defendants and other employers throughout the state violate the CMWA. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

79. Plaintiff re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

80. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a

rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

81. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

82. Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

83. At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

84. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

85. Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

86. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due

and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [CMWA Overtime Violations
### On Behalf of Plaintiff and Rule 23 Class]

87. At all relevant times, Plaintiff was employed by the Defendants within the meaning of Conn. Gen. Stat. §31-58(f).

88. This claim is brought individually on behalf of the named plaintiff as well as on behalf of the Class.

89. Defendants willfully violated the rights of Plaintiff and all other members of the Connecticut Class by failing to pay overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek in violation of Conn. Gen. Stat. §31-76c.

90. Defendants willfully failed to distribute records of hours worked, earnings, and overtime to the restaurant workers, in violations of Conn. Gen. Stat. §31-13a.

91. Defendants willfully failed to keep records of hours worked by the restaurant workers, in violation of Conn. Gen. Stat. §31-66.

92. Based upon the foregoing, Defendants' conduct in this regard was a willful violation of the CMWA, and entitles Plaintiff and all other members of the Connecticut Class to overtime compensation for all hours worked in excess of forty per week at one and one-half times the regular rate, penalty damages, interest, and court costs.

93. Defendants' conduct in failing to pay Plaintiff and all other members of the Connecticut Class their overtime compensation was unreasonable, arbitrary

and/or in bad faith, in that Defendants knew or should have known that they were entitled to be paid for all hours worked in excess of forty per week at one and one-half times the regular rate, but failed to do so. Accordingly, Plaintiff and all other members of the Connecticut Class are entitled to compensation for all hours worked at one and one-half times the regular rate, penalty damages, attorneys' fees, and court costs.

## DEMAND FOR TRIAL BY JURY

94. Plaintiff demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiff and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing

individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

  d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and CMWA;

  e) An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

  f) An award of unpaid overtime wages due under FLSA and CMWA due Plaintiff and the Collective Action members plus compensatory and liquidated damages;

  g) An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

  h) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b);

  i) The cost and disbursements of this action;

  j) An award of prejudgment and post-judgment fees;

  k) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: May 30, 2025,
Flushing, New York

                                            TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA Collective and Proposed Class Plaintiff*
By: \_\_\_\_/s/ John Troy_____
John Troy
41-25 Kissena Boulevard Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com